```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                     WESTERN DIVISION


DON PARKER                                           PLAINTIFF

VS.                          CIVIL ACTION NO. 5:05-cv-209(DCB)(JMR)

TYSON FOODS, INC., and
RICHARD SHEWMAKER, Individually                     DEFENDANTS
```

MEMORANDUM OPINION AND ORDER

This cause is before the Court on the defendants Tyson Foods, Inc. ("Tyson"), and Richard Shewmaker, Individually ("Shewmaker")'s motion for summary judgment **(docket entry no. 30)**, and on the defendants' motion to strike affidavit of Bryan K. Moody **(docket entry 47)**. Having carefully considered the motion and response, the memoranda and all supporting documents, the applicable law, and being otherwise fully advised in the premises, the Court finds as follows:

In this employment discrimination case, the plaintiff claims discriminatory treatment based on his race (Caucasian) in violation of 42 U.S.C. § 2000e, et seq. ("Title VII") and 42 U.S.C. § 1981 ("Section 1981"), as well as state law claims for intentional infliction of emotional distress, defamation, invasion of privacy, breach of contract and wrongful discharge. Complaint, ¶ 1. The defendants move for summary judgment on all claims.

**I. Summary Judgment Standard**

A grant of summary judgment is appropriate when, viewed in the light most favorable to the nonmoving party, "[t]he pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Adcock v. International Paper Co., 809 F.Supp. 457, 459 (S.D. Miss. 1992) ("[s]ummary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists"). As noted by the Fifth Circuit,

> If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting [summary judgment] is proper. On the other hand, if reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, [summary judgment] should be denied, and the case submitted to the jury. A mere scintilla is insufficient to present a question for the jury. However, it is the function of the jury as the traditional finder of facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses. The Court should consider all of the evidence – not just that evidence which supports the non-mover's case – but in the light and with all reasonable inferences most favorable to the party opposed to the motion [summary judgment].

Molnar v. Ebasco Constructors, Inc., 986 F.2d 115, 117-18 (5th Cir. 1993)(citation omitted).

In an employment discrimination case, the Court should focus on whether a genuine issue exists regarding whether the defendant intentionally discriminated against the plaintiff. Grimes v. Texas Dept. of Mental Health, 102 F.3d 137 (5th Cir. 1996); LaPierre v. Benson Nissan, Inc., 86 F.3d 444 (5th Cir. 1996); Armstrong v. City of Dallas, 997 F.2d 62 (5th Cir. 1993). Unsubstantiated assertions are not competent summary judgment evidence. Grimes, 102 F.3d at 139; Forsyth v. Barr, 19 F.3d 1527, 1533 (5th Cir. 1994). Nor are

2

conjecture or speculation adequate to satisfy the nonmovant's burden. See Little v. Liquid Air Corp., 37 F.3d 1069, 1079 (5th Cir. 1994). The Fifth Circuit has held that an employee's self-serving generalized testimony stating his subjective belief that discrimination occurred "is simply insufficient to support a jury verdict in plaintiff's favor." See Grizzle v. Travelers Health Network, Inc., 14 F.3d 261, 268 (5th Cir. 1994). Likewise, the Fifth Circuit has held that summary judgment may be appropriate in cases where elusive concepts such as motive or intent are at issue, if the nonmoving party rests merely upon conclusory allegations, improbable inferences and unsupported speculation. See Krim v. BancTexas Group, Inc., 989 F.2d 1435, 1449 (5th Cir. 1993).

**II.  The Facts of the Case**

The plaintiff, Don Parker ("Parker"), was originally hired by Tyson in February of 1995. He left in April of 2001 to seek other employment. In September of 2001 he again sought work with Tyson, and signed and submitted a written employment application on September 4, 2001. The Application provided:

> I understand that this application and any other company documents are not contracts of employment, and that any individual who is hired may voluntarily leave upon proper notice and may be terminated by the Company at any time and for any reason.

Application for Employment. Parker admits that he read and understood the application prior to signing it. Parker Depo. at 51. Parker was hired by Tyson on September 11, 2001, to work in the maintenance department of its Vicksburg plant. Id. at 36. On

September 28, 2004, he signed a Harassment/Discrimination Policy Training Acknowledgment Form.

On October 28, 2004, Parker received a Disciplinary Action Notification for failure to wear a required safety harness. Parker Depo. at 81-83. He admits that he committed this infraction, that this was a violation of Tyson's Core Safety Mandates, and that he had received training on this issue and understood the policy. Id. Parker was suspended for three days in connection with this employment infraction. Id.

On December 9, 2004, Stephanie Randolph (an African-American and a fellow employee of Parker), returned to the Tyson parking lot after her lunch break and parked beside Parker's truck. Affidavit of Stephanie Randolph. Randolph noticed a doll in Parker's truck hanging from the rear-view mirror, as well as a confederate flag hanging from the passenger-side visor beside the doll. The doll had a noose around its neck, with its hands behind it. Id. Randolph found this to be extremely offensive, and went inside to complain to management. Id. She found Plant Manager Richard Shewmaker (like the plaintiff, a Caucasian). Shewmaker went to look for Parker's truck. Affidavit of Richard Shewmaker. When Shewmaker found the truck, he saw the doll and flag and went back to the plant to get a camera. Id. When he returned to the truck, the doll had been cut down, but a portion of the string from which it hung was still tied to the rear view mirror. The confederate flag was still hanging on the visor. Shewmaker instructed Alan Johnston, Assistant Plant Manager, to take pictures of the flag and

4

string.  Id.  Meanwhile, other employees had also gathered around Parker's truck and appeared to be upset.  Randolph Affid.

Parker had removed the doll because a co-employee had alerted him that it had caused a disturbance.  Parker Depo. at 107.  Parker left the line where he was working, went out to the parking lot, and cut down the doll.  Id.  Parker later went to Shewmaker's office, where he found Shewmaker, Alan Johnston and Michael Cox, HACCP Manager.  Id.  Parker gave the doll and attached string to Shewmaker.  Parker Depo. at 110-11.  Shewmaker told Parker to wait in an adjacent conference room and that they would call him back when they were ready to talk to him.  Id. at 110.  While Parker was in the conference room, Shewmaker instructed Johnston to make several photographs of the doll, noose, and string.  Shewmaker Affid.

When Parker returned to Shewmaker's office, only Alan Woodham (Assistant Maintenance Manager), and Shewmaker were present. Parker Depo. at 114.  Parker closed the door behind him when he entered the office.  Id. at 114-15.  According to Parker, he told Shewmaker that the doll was a "homey" doll, that it was a gift from a friend which he hung from his rear view mirror because he did not want to lose it, and that the confederate flag was his heritage. He also alleges that Shewmaker told him that the incident "did not look good, it looked racist, and they were going to suspend [him] until further investigation."  Id. at 116.  Parker was in fact suspended by Shewmaker on December 9, 2004, and a written Disciplinary Action Notification memorializing the suspension was

5

prepared.  Shewmaker Affid.

Tyson subsequently reviewed the incident. Angela Hamilton, the Shift Human Resources Manager, and Sharon Robinson, the Plant Human Resources Manager, gathered information at Shewmaker's instruction, which included interviewing Parker and other witnesses. Affidavit of Sharon Robinson. Laura Brewster (a Caucasian), an EEO Specialist who administered Tyson's policies against harassment and discrimination, reviewed the gathered information, including statements from numerous employees who were offended by Parker's conduct. Affidavit of Laura Brewster.

Once the investigation was completed, Brewster concluded that Parker had violated Tyson's Harassment and Discrimination Policy. Brewster Affid. After reviewing the gathered information and Parker's disciplinary record, and receiving Brewster's conclusions, Shewmaker decided to terminate Parker because he had incurred two serious counseling statements with suspension within the last twelve months. Shewmaker Affid. Tyson's Rules of Conduct contained in the Tyson Benefits and Guidelines in effect at the time of Parker's discharge provide that discharge is appropriate where an employee incurs two serious counseling statements with suspension within a twelve month period. These were Parker's suspensions for violating Tyson's safety rules in October 2004, and for violating Tyson's harassment and discrimination policy in December 2004. Shewmaker Affid.; Brewster Affid. The Company notified Parker of his termination on December 20, 2004. Parker Depo. at 135.

6

## III.  Section 1981 Claim

Although the plaintiff mentions 42 U.S.C. § 1981 in the first paragraph of his complaint, he makes no further reference to the statute.  Section 1981 gives equal protection of the laws in making employment contracts.  Inasmuch as Parker does not allege any wrongful conduct with respect to an employment contract, he has failed to state a claim under Section 1981, and summary judgment shall be granted.

## IV.  Title VII Claim

As a preliminary matter, the Court notes that the plaintiff's complaint alleges violations of Title VII and state law against "the defendants" collectively, without distinguishing between Tyson and Shewmaker.  Shewmaker is described as a "the Plant Manager."  Complaint, ¶ 9.  The complaint alleges that "Defendant Tyson acted by and through its employees, including the individual Defendant named herein."  Complaint, ¶ 7.

Title VII prohibits discrimination by an "employer" on the basis of, <u>inter alia</u>, an employee's race.  42 U.S.C. § 2000e-2.  Title VII defines "employer" as "a person engaged in an industry affecting commerce ... and any agent of such a person."  42 U.S.C. § 2000e(b).  According a liberal construction to the term "any agent," the Fifth Circuit has found immediate supervisors to be employers under Title VII "when delegated the employer's traditional rights, such as hiring and firing," <u>Harvey v. Blake</u>, 913 F.2d 226, 227 (5th Cir. 1990), or "'if he participated in the decisionmaking process that forms the basis of the

discrimination.'"  Hamilton v. Rodgers, 791 F.2d 439, 442-43 (5th Cir. 1986)(citing Jones v. Metro. Denver Sewage Disposal Dist., 537 F.Supp. 966, 970 (D. Colo. 1982)).  The Fifth Circuit has also considered factors such as whether the supervisor was responsible for the terms and conditions of the plaintiff's employment, or for the plaintiff's work assignment within the company.  Garcia v. Elf Atochem North America, 28 F.3d 446, 451 (5th Cir. 1994).  "The purpose of extending 'employer' status to immediate supervisors is to hold liable those with power over the plaintiff which exceeds that of mere co-workers."  Id.

A supervisor can only be held liable under Title VII, however, in his or her official capacity as an agent of the employer.  Grant v. Lone Star Co., 21 F.3d 649, 652 (5th Cir.), cert. denied, 513 U.S. 1015 (1994).  An individual employee may not be held personally liable for damages under Title VII.  Id. at 652-53.  The purpose of the "agent" provision in § 2000e(b) was to incorporate respondeat superior liability into Title VII, and the Fifth Circuit has expressly declined to extend the liability of individual employees beyond the respondeat superior principle.  Id. at 652.

Since individual employees cannot be held personally liable under Title VII, any Title VII claims against Shewmaker in his individual capacity are without merit.  See Garcia, 28 F.3d at 451.  Furthermore, since the plaintiff also names the employer (Tyson) as a defendant, any Title VII claims against Shewmaker in his official capacity would be merely repetitive.  The employer alone is liable for any violation of Title VII; therefore, claims against Shewmaker

8

as agent or in his official capacity merge into claims against the employer.  See Taylor v. Scottpolar Corp., 995 F.Supp. 1072, 1079 (D. Arizona, 1998); Gary v. Long, 59 F.3d 1391, 1399 (D.C. Cir. 1995); Sauers v. Salt Lake County, 1 F.3d 1122, 1125 (10th Cir. 1993); Saylor v. Ridge, 989 F.Supp. 680, 688 (E.D. Penn. 1998) ("because a suit against a defendant in his or her official capacity is nothing more than suit against the defendant's employing entity, dismissal of an individual defendant in their official capacity is appropriate")(citing Clarke v. Whitney, 907 F.Supp. 893 (E.D. Pa. 1995)(citing Kentucky v. Graham, 473 U.S. 159 (1985)); see also Dufrene v. Pellittieri, 1996 WL 495150 (E.D. La. 1996), and cases cited therein; Allen v. Tulane University, 1993 WL 459949 (E.D. La. 1993), and cases cited therein.  Thus, any Title VII claims against Shewmaker in his official capacity are without merit as well.

   The plaintiff claims that he was terminated as a result of discrimination because of his race.  On disparate treatment claims, the plaintiff must prove the defendant acted with a discriminatory motive or intent.  Absent the unusual situation of direct evidence of the employer's discriminatory intent, the Title VII plaintiff must look to the burden of proof scheme established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and later refined in Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1982).  Under this scheme, the plaintiff must first establish a prima facie case of discrimination.  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993).  If proved, a prima facie case

9

gives rise to a presumption of discrimination and shifts the burden of production to the defendant to rebut the presumption. Id. In short, it becomes the defendant's burden to produce evidence that the challenged actions were taken for a legitimate, nondiscriminatory reason. Id. at 506-07. To carry this burden, the defendant "'must clearly set forth, through the introduction of admissible evidence,' reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." Id. at 507 (quoting Burdine, 450 U.S. at 254-55).

If the defendant carries the burden of production, then the presumption of discrimination drops from the case. Id. The plaintiff retains the ultimate burden of persuading the trier of fact of intentional discrimination. Id. To prevail, the plaintiff must directly prove the employer acted on a discriminatory motive or indirectly prove the employer's reasons were a pretext for discrimination, that is, the stated reasons were false and discrimination was the real reason. Id. "Although a prima facie case combined with disproof of the employer's explanation does not prove intentional discrimination as a matter of law, it may permit the factfinder to infer intentional discrimination, and thus preclude summary judgment for the employer." Durham v. Xerox Corp., 18 F.3d 836, 840 (10th Cir. 1994). On the other hand, summary judgment is appropriate when the plaintiff fails to present evidence of pretext.

In order to establish a prima facie case of race

discrimination, the plaintiff must show: (1) he is a member of a protected group; (2) he was qualified for the position; (3) an adverse employment action occurred; and (4) he was replaced by a person not in the protected group.  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993); Tex. Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Alternatively, the plaintiff may establish a prima facie case by showing that he is a member of a protected class, he was qualified for the position, and persons outside the protected class were treated more favorably than he. Waggoner v. City of Garland, 987 F.2d 1160, 1163 (5th Cir. 1993). In the context of terminations for misconduct, it has been held that the elements of a prima facie case are:

> (1) that the plaintiff belongs to a class protected under Title VII; (2) that the plaintiff was qualified for the job; and (3) that the misconduct for which the employer discharged the plaintiff was the same or similar to what a similarly situated employee engaged in, but that the employer did not discipline the other employee similarly.

Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).  The most important factors in this analysis are the nature of the offense committed and the punishment imposed.  See Jones v. Bessemer Carraway Med. Ctr., 137 F.3d 1306, 311 (11th Cir. 1998).  At all times, the plaintiff has the ultimate burden to prove race discrimination.  Hicks, 509 U.S. at 510.

In this case, the plaintiff's offense was his violation of Tyson's Harassment and Discrimination Policy, which provides, in part:

> Harassment is defined as, but is not limited to, any unwelcome conduct, whether verbal, physical or visual, which discriminates against any person or groups of people based on their sex, race, color, religion, national origin, age disability or other protected status. Harassment is conduct, whether explicit or implied, verbal or non-verbal, which affects tangible job benefits, interferes with a person's work performance, creates a hostile work environment, or diminishes the dignity of any person. Other prohibited conduct includes: offensive racial, ethnic, religious, age-related, or sexual jokes or insults; distributing or displaying offensive pictures or cartoons; and using voicemail, email or other electronic devices to transmit derogatory or discriminatory information.

Harassment/Discrimination Policy, p. 1.

The plaintiff argues that he was not trying to harass anyone. However, the issue is not whether Parker actually harassed anyone, it is simply whether he violated his company's policy. It is a legitimate concern of an employer who employs African-Americans to prohibit the display of the Confederate flag in close proximity to a doll hanging by its neck, as a means of preventing harassment or the perception of harassment.

Tyson does not challenge Parker's status as a member of a protected class, that he was qualified for the position he held, or that he was ultimately discharged on December 20, 2004. The defendant does, however, challenge the plaintiff's ability to establish a prima facie case in that he cannot show that a similarly situated individual outside the protected class received more favorable treatment.[1]

The Fifth Circuit has held that "to establish disparate

---

[1] Parker does not allege that he was replaced by an individual outside his protected class.

12

treatment, a plaintiff must show that the employer gave preferential treatment to another employee under "nearly identical circumstances;" that is, "that the misconduct for which the plaintiff was [demoted] was nearly identical to that engaged in by ...[other] employee[s]." Okoye v. The University of Texas Houston Health Science Center, 245 F.3d 507, 513 (5th Cir. 2001)(citation omitted). See also Lockett v. Wal-Mart Stores, Inc., 2004 WL 21006411 (E.D. Tex). Employees who engaged in different violations of company policy are not nearly identical for purposes of Title VII. See Okoye, 245 F.3d at 513; see also Coleman v. Exxon Chemical Corporation, 162 F.Supp.2d 593 (S.D. Tex. 2001) (employee with different responsibilities, different capabilities, different work rules violations, and different disciplinary rewards is not nearly identical).

In Birdow v. Runyon, 1999 WL 956876 (N.D. Tex. Oct. 19, 1999), the district court found that the individuals with whom the plaintiff sought to compare his treatment "must have dealt with the same supervisor, been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Id. at *4. See also Snipes v. Illinois Dep't of Corrs., 291 F.3d 460, 463 (7th Cir. 2002).

In Mayberry v. Vought Aircraft Co., 55 F.3d 1086 (5th Cir. 1995), the plaintiff, who was black, was suspended for poor workmanship under the employer's progressive discipline system, and

13

claimed that white employees who committed similar violations were not suspended. Although the plaintiff's evidence showed that some white employees received negative comments regarding their work, it did not demonstrate that any of those employees committed offenses of the same seriousness as those of the plaintiff. The Fifth Circuit therefore found that the plaintiff had failed to establish a prima facie case of discrimination based on a showing of alleged disparate treatment of employees of a different race. Id. at 1089.

Parker has submitted no evidence that any non-white employee who received two serious counseling statements with suspension within a twelve month period was not also discharged. He offers only hearsay testimony that a black co-worker, Delores Smith, used "the N-word" in conversation with other blacks and was not disciplined. Regardless of hearsay, this is neither evidence of a similarly situated employee nor of similar, much less "nearly identical" circumstances. Nor is there any evidence that the persons to whom the remarks were made were offended by or complained about them.

Parker also offers an affidavit of Brian Moody, a white co-worker who discussed Smith's use of "the N-word" with Assistant Manager Sammy Coleman. Coleman was not a decision maker in Parker's suspension and termination. Moreover, Smith's conduct is too remote in time (allegedly occurring between 1999 and 2001) to have any bearing on the employment decision at issue in this case. There is also no evidence that Smith had a prior workplace infraction at the time, as did Parker. Finally, Parker's

allegation that blacks were allowed to wear t-shirts expressing their racial identity is unavailing. The plaintiff offers no evidence that anyone was offended by or complained about the t-shirts, nor does he even identify the wearers of the shirts.

Thus, Parker has failed to show that a similarly situated employee, not in Parker's protected class, was treated more favorably, and cannot establish a prima facie case. Even if he were able to do so, the defendant has shown a legitimate, nondiscriminatory reason for Parker's discharge, namely his violation of Tyson's harassment and discrimination policy. To prevail, Parker would have to demonstrate the defendant's proffered reasons for his termination were merely a pretext to disguise racial discrimination. In Mayberry, the Fifth Circuit held that in work-rule violation cases, the plaintiff must still rebut the defendant's nondiscriminatory reasons even when a fact issue exists as to whether the plaintiff actually violated the work-rule in question. Mayberry, 55 F.3d at 1091 n. 4.

Parker attempts to rebut Tyson's nondiscriminatory reasons by reasserting his prima facie evidence of dissimilar treatment, and by claiming that a fact question exists regarding whether he had in fact violated company policy. However, the summary judgment evidence establishes that the defendant, in its judgment, had sufficient evidence to support its conclusion that the plaintiff had violated its harassment and discrimination policy, thus warranting his suspension and termination. "The question is not whether an employer has made an erroneous decision; it is whether

15

the decision was made with discriminatory motive." Germany v. Austin Coca-Cola Bottling Co., 2002 WL 629187, *7 (N.D. Tex. April 17, 2002)(citing Mayberry, 55 F.3d at 1091 ("[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, nondiscriminatory reason ... motive is the issue ...."). Parker has offered no evidence that the disciplinary action against him was motivated by discrimination based on his race, nor has he provided any evidence to rebut Tyson's legitimate, nondiscriminatory reasons for its actions.

Having failed to identify a suitable comparator, the plaintiff cannot establish a prima facie case. Moreover, the defendant has articulated legitimate, nondiscriminatory reasons for the plaintiff's discharge, and the plaintiff has not asserted a genuine issue of material fact as to pretext. Summary judgment is therefore warranted on the plaintiff's Title VII claims.

## V. State Law Claims

In deciding whether to exercise supplemental jurisdiction over the plaintiff's state law claims, the Court is guided by 28 U.S.C. § 1367, which gives federal courts jurisdiction over state law claims in limited circumstances:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). Section 1367(c)(3) provides that a district court "may decline to exercise supplemental jurisdiction over a

claim under subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction." As the commentary to section 1367(c)(3) explains:

> the idea here is that once the crutch is removed – the claim that supports the supplemental jurisdiction of the other claim or claims – the other should not remain for adjudication ... .

28 U.S.C. § 1367 Practice Commentary (West Supp. 1993). District courts enjoy wide discretion in determining whether to retain supplemental jurisdiction over state claims once all federal claims are dismissed. Noble v. White, 996 F.2d 797, 799 (5th Cir. 1993). In fact, the Fifth Circuit's "general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed." Parker & Parsley Petroleum v. Dresser Industries, 972 F.2d 580, 585 (5th Cir. 1992)(citing Wong v. Stripling, 881 F.2d 200, 204 (5th Cir. 1989)); see also Rhyne v. Henderson County, 973 F.2d 386, 395 (5th Cir. 1992).

The Court is guided by the considerations of "judicial economy, convenience, fairness and comity." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988). In United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966), the Supreme Court emphasized that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of the applicable law."

Because there exists no independent basis of federal jurisdiction, and in the interest of comity, judicial economy, convenience, and fairness to the litigants, the Court exercises its

discretion pursuant to 28 U.S.C. § 1367 and declines to exercise supplemental jurisdiction over the plaintiff's state law claims.

Nothing in this opinion should be construed as a comment on the merits of the plaintiff's state law claims.  States may recognize positive duties of care and make the breach of those duties tortious; however, the only duties of care that may be enforced in suits under Title VII are duties found in the Constitution or laws of the United States.  Accordingly,

IT IS HEREBY ORDERED that the defendants Tyson Foods, Inc., and Richard Shewmaker's motion for summary judgment **(docket entry no. 30)** is GRANTED as to all federal claims, and they are dismissed with prejudice;

FURTHER ORDERED that the defendants' motion to strike affidavit of Bryan K. Moody **(docket entry 47)** is DENIED AS MOOT;

FURTHER ORDERED that the Court declines to exercise supplemental jurisdiction over the state law claims, and they shall be dismissed without prejudice.

A separate Final Judgment in accordance with Fed.R.Civ.P. 58 shall follow.

SO ORDERED, this the   9th   day of July, 2007.


              s/ David Bramlette
            UNITED STATES DISTRICT JUDGE